# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANNA LYNN HARRIS,** | : | **CIVIL NO. CV-01-0270** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 14). The parties have fully briefed the issues and the motion is now ripe for disposition.

**I.   Factual Background**

Plaintiff Dianna Harris alleges the following facts in her complaint. Harris worked as a clerk stenographer for the Pennsylvania Board of Probation and Parole ("the Board") from January 1993 until December 1998. Complaint, ¶ 11. Due to childhood polio, she suffers from a "weakened immune system." Id. at ¶ 12. From May 1995 until November 1997, plaintiff worked at the Board's Central Office Building located at 3101 North Front Street, Harrisburg, Pennsylvania. Id. at ¶¶ 13 & 33. Throughout this period of time, the Board allowed smoking in the Central Office Building. Id. at ¶ 14 & 27.

Harris made numerous complaints to her supervisors of illness caused by breathing second-hand smoke while at work. Complaint, ¶ 16. In June 1996, she was diagnosed with allergic rhinitis with secondary headaches and pain. Id. at ¶ 18. In August 1996, Harris presented defendant David Payton with a note from her doctor. Id. at ¶ 19. In the note, Harris's doctor informed Payton of plaintiff's condition and recommended that plaintiff be place in an area wheres there is no tobacco smoke. Id. The doctor also recommended use of an overhead air filter to remove any tobacco smoke from the air. Id. According to the complaint, Payton took no action in response to plaintiff's doctor's note. Id.

In August 1996, Harris met with defendant Ladelle Ingram to request a reasonable accommodation, under the Americans with Disabilities Act ("ADA"), to minimize her exposure to tobacco smoke in the workplace. Complaint, ¶ 20. Ingram allegedly "harassed plaintiff [sic] belittled her complaints, dissuading her from filing for an accommodation." Id.

On August 28, 1996, Harris requested that Payton provide her with an air filter. Complaint, ¶ 21. On September 4, 1996, Harris requested that defendant Robert Yerger provide her with an air filter. Complaint, ¶ 22. Neither Payton or Yerger responded to plaintiff's requests. Id. at 21 & 22.

On September 23, 1996, Payton gave Harris an "unsatisfactory" attendance rating, noting on the evaluation form that "plaintiff missed too much time from work." Complaint, ¶ 23. According to the complaint, Harris's absences were

caused by second-hand smoke related illnesses.  Id.  Plaintiff complained to Yerger about her unsatisfactory attendance rating.  Complaint, ¶ 24.  In response to her complaint, Yerger allegedly changed Harris's rating to "satisfactory."  Id.  However, Yerger refused to remove Payton's notation about missing too much work.  Id.  Yerger and Payton "blocked" plaintiff's attempt to bring her evaluation complaint to Yerger's supervisor, defendant Mike Neumyer.  Id. at ¶ 25.  Instead, Yerger and Payton scheduled a meeting with plaintiff to discuss her concerns with the evaluation.  Id.  Yerger and Payton allegedly prohibited Harris's union representative from attending the meeting.  Id.

In October 1996, plaintiff was provided with a "desktop" air filter.  Complaint, ¶ 26.  However, the air filter proved ineffective.  Id.  After receiving the air filter, Harris continued to demand a reasonable accommodation.  Id.  Payton purportedly told her that further accommodations were not necessary because the building was leased and not owned by the Commonwealth.  Id.

In February 1997, Harris requested a transfer to one of the other two Central Office buildings, both of which were smoke-free.  Complaint, ¶ 29.  Defendants denied her request.  Id.

In May 1997, Yerger allegedly forced Harris to perform work assignments in a "dust- and dirt-filled warehouse."  Id. at ¶ 30.  Yerger provided plaintiff with an ineffective respiratory mask to use in the warehouse.  Id.  Shortly after beginning her assignment in the warehouse, "plaintiff's hands began to swell up, a rash

developed on her neck, and she began coughing up blood." Id. As a result, she missed several days of work. Id.

On October 31, 1997, Harris and several co-workers sent a letter to Governor Thomas Ridge concerning second-hand smoke related health hazards at the Central Office building. Complaint, ¶ 32. In retaliation for her letter, Neumyer transferred Harris to the Board's Harrisburg District Office. Id. at ¶ 33. The District Office was purportedly well-known to defendants as a building with significant air quality problems. Id. at ¶ 34. Defendants allegedly transferred plaintiff with the expectation that it would further adversely affect her health. Id. at ¶ 35. According to the complaint, the poor air quality at the District Office caused plaintiff to suffer from "frontal headaches, pain in her jaw, joint achiness, nausea, rashes, flushing, and a worsening of her respiratory condition and allergies." Id. at ¶ 37.

On January 13, 1998, Harris filed a charge of discrimination ("the 1998 charge") with the Pennsylvania Human Relations Commission ("PHRC"). Complaint, ¶ 40. In the 1998 charge, plaintiff alleged "that she was transferred as a result of her medical condition and the fact that she had complained about the defendant's [sic] failure to maintain a smoke-free building." Id. Harris cross-filed the 1998 charge with the Equal Employment Opportunities Commission ("EEOC"). Id.

On April 1, 1998, the staff of the District Office wrote a memorandum to defendant Linwood Fielder expressing concerns about the air quality at the District Office building. Complaint, ¶ 41. Fielder purportedly took no action in response to the staff's memorandum. Id. On May 8, 1998, Harris requested that Fielder provide her with an air filter for her workstation. Id. at ¶ 43. Fielder denied Harris's request. Id.

On July 18, 1998, the Pennsylvania Department of Health issued a report regarding the air quality at the District Office building. Complaint, ¶ 44. Harris made numerous requests for a copy of the report. Id. However, defendants refused to provide plaintiff with a copy of the report. Id. Defendants informed Harris of the results of the District Office tests approximately one year after her initial request. Id.

On August 5, 1998, defendants granted Harris unpaid medical leave. Complaint, ¶ 45. On September 1, 1998, Harris informed defendants that she would not return to work at the District Office due to medical concerns. Id. at ¶ 46. On October 19, 1998, plaintiff requested that defendants let her return to work at one of the smoke-free Central Office buildings. Id. at 47. At that time, she also submitted a written request to defendants for a reasonable accommodation under the Americans with Disabilities Act. Id.

On October 26, 1998, plaintiff received a letter from defendant Gary Scicchitano directing her to return to work at the District Office or risk

termination. Complaint, ¶ 48. Harris refused to return to work at the District Office until defendants provided her with a copy of the Department of Health's inspection report. Id. at ¶ 49. Defendants again refused to provide plaintiff with a copy of the report. Id. On November 12, 1998, defendants scheduled a pre-disciplinary conference to take place on November 24, 1998 at the District Office. Complaint, ¶ 50. Harris did not attend the conference. Id.

Harris requested a meeting with defendant William Ward to discuss her return to work. Complaint, ¶ 50. Ward failed to respond to her request. Id. By letter dated December 11, 1998, defendants terminated plaintiff's employment with the Board. Id. at 51.

On October 8, 1999, Harris filed a charge of discrimination ("the 1999 charge") with the EEOC, "alleging discrimination on the basis of disability, gender, age, and in retaliation for plaintiff having complained about defendants' failure to provide a smoke-free building." Complaint, ¶ 52. She cross-filed the 1999 charge with the PHRC. Id. On October 16, 2000, the EEOC issued Harris a right-to-sue letter. Id. at ¶ 53.

On January 9, 2001, Harris filed the complaint in the Dauphin County Court of Common Pleas. (See Doc. 1). On February 12, 2001, defendants removed the case to this court. Id. Defendants filed the instant motion to dismiss on August 13, 2001. (Doc. 14).

6

**II.    Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims which fail to assert a basis upon which relief can be granted. When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Id. The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

"In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Ben. Guar. Corp. v. White Consol. Ind., 998 F.2d 1192, 1196 (3d Cir. 1993). Finally, the court must grant leave to amend before dismissing a complaint that is merely deficient. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III. Discussion

#### A. The Americans with Disabilities Act - 42 U.S.C. §§ 12101, et seq., and the Age Discrimination in Employment Act - 29 U.S.C. §§ 623, et seq.

Defendants assert that plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 623, et seq. ("ADEA"), are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. AMEND. XI (1798).

"The [Eleventh] Amendment has been interpreted to protect an unconsenting state from 'suit in federal court by its own citizens as well as those of another state.' " Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (citing Pennhurst State School v. Halderman, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1 (1890)). See also Lapides v. Board of Regents of the University System of Georgia, 535 US 613, 616 (2002).

Congress can abrogate the Eleventh Amendment "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority' "). See Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). Congress attempted to do so in both the ADA,

see 42 U.S.C. § 12202, and the ADEA, see 29 U.S.C. §§ 626(b), 626(c)(1).  However, the Supreme Court invalidated ADA § 12202 and ADEA §§ 626(b), 626(c)(1); finding that those sections constitute unconstitutional uses of the legislative power.  See Garrett, 531 U.S. at 967-68 (ADA case); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000) (ADEA case).  Therefore, the Eleventh Amendment bars plaintiff's ADA and ADEA claims unless defendants waived the Amendment's application.

Plaintiff asserts that defendants' removal of this case from the Dauphin County Court of Common Pleas acted as an explicit waiver of defendants' Eleventh Amendment immunity.  During the pendency of defendants' motion to dismiss, the United States Supreme Court held that a state waives its Eleventh Amendment rights when it removes a case to the federal courts.  Lapides v. Board of Regents of the University System of Georgia, 535 US 613, 616 (2002).

Although the Supreme Court limited its holding to removal of "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings," Lapides, 535 U.S. at 617, the Court's reasoning applies equally to plaintiff's ADA and ADEA claims.  The Court noted that:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

9

Lapides, 535 U.S. at 619.  The Third Circuit Court of Appeals extended Lapides to removal of federal claims.  See Fidtler v. PA Dept. of Corrections, 55 Fed.Appx. 33, 35, 2002 WL 31648368, *1 (3rd Cir. 2002).  See also Estes v. Wyoming Dept. of Transportation, 302 F.3d 1200, 1204-06 (10th Cir. 2002).

The court finds that defendants' removal of this case to federal court constitutes a waiver of Eleventh Amendment immunity.  Lapides, 535 U.S. at 616; Estes, 302 F.3d 1204-06.  Accordingly, taken as true, the complaint states a claim upon which relief could be granted.  The court will deny defendants' motion to dismiss plaintiff's ADA and ADEA claims.

  **B.** **Title VII of the Civil Rights Act - 42 U.S.C. § 2000e-1, et seq.**

    **1.** **Claims Against the Pennsylvania Board of Probation and Parole**

In Count II (Discrimination on the Basis of Gender) and Count IV (Retaliation) of the complaint, plaintiff alleges that her employer violated Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-1, et seq.  Defendants contend that the court does not have jurisdiction to hear plaintiff's Title VII claims because plaintiff failed to file timely complaints of those allegations with the EEOC.

For this court to exercise jurisdiction over plaintiff's Title VII claims, she must have filed a charge of Title VII discrimination with the EEOC within 300 days of the alleged conduct.  29 C.F.R. § 1601.13(a)(4)(ii)(A).  Defendants' last allegedly discriminatory act was terminating plaintiff on December 11, 1998.  Complaint, ¶ 51.

According to the complaint, plaintiff filed a gender discrimination charge with the EEOC on October 8, 1999. Id. at ¶ 52.[1] [2] Plaintiff filed the 1999 charge more than 300 days subsequent to defendants' last allegedly discriminatory act. Id. at ¶ 51. Therefore, the 1999 charge was filed untimely. 29 C.F.R. § 1601.13(a)(4)(ii)(A).

Plaintiff asserts numerous facts absent from the complaint which, if true, may support a finding that plaintiff filed timely the 1999 charge. (See Doc. 21, pp. 13-16, and attached exhibits). However, on a motion to dismiss the court must base its decision only on the facts alleged in the complaint, making all reasonable inferences in the plaintiff's favor. Langford, 235 F.3d at 847. The court may not consider facts outside the complaint. Jordan, 20 F.3d at 1261. Therefore, the court will grant the Board's motion to dismiss plaintiff's Title VII claims without prejudice and grant leave to amend the complaint.

---

[1] Paragraph 52 of the complaint provides:

On or about October 8, 1999, plaintiff filed an administrative complaint with the EEOC, alleging discrimination on the basis of disability, gender, age, and in retaliation for plaintiff having complained about defendants' failure to provide a smoke-free building. This complaint was dual-filed with the PHRC.

Complaint, ¶ 52.

[2] Plaintiffs also filed a discrimination charge on January 13, 1998. Complaint, ¶ 40. However, according to the facts in the complaint, the 1998 charge alleged only discrimination on the basis of disability. Title VII concerns discrimination on the basis of "race, color, religion, sex, or national origin." See 42 U.S.C. §§ 2000e-2, 2000e-3 (retaliation). Therefore, the 1998 charge is insufficient to confer jurisdiction to hear plaintiff's Title VII claims.

### 2. Claims against the Individual Defendants

Plaintiff also asserts her Title VII claims against the individual defendants. However, individuals cannot be held liable under Title VII. <u>Le v. University of Pennsylvania</u>, 321 F.3d 403, n.3 (3d Cir. 2003); <u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1077-78 (3d Cir. 1996).  Therefore, the court will grant defendants' motion to dismiss the Title VII claims against the individual defendants with prejudice.

### C. Pennsylvania Human Relations Act - 63 P.S. § 955, <u>et seq</u>.

Under the Pennsylvania Human Relations Act ("PHRA"), it is unlawful to discriminate in employment on the basis of:

> race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap . . . .

43 P.S. § 955(a). <u>See</u> <u>also</u> 43 P.S. § 955(d) (retaliation).

For the court to exercise jurisdiction over plaintiff's PHRA claims, she must have filed an administrative complaint within 180 days after the alleged discrimination. <u>See</u> 43 P.S. §§ 959(a), (h). Plaintiff contends that cross-filing the 1999 EEOC complaint with the Pennsylvania Human Relations Commission fulfilled the PHRA filing requirement. (Doc. 21, pg. 18) (citing <u>Parsons v. City of Philadelphia Coordinating Office of Drug and Alcohol Abuse Programs</u>, 833 F.Supp. 1108, 1112 (E.D.Pa.,1993); <u>Lukus v. Westinghouse Elec. Corp.</u>, 419 A.2d 431,

452 (Pa.Super. 1980)).  This argument is unpersuasive because plaintiff did not timely file the 1999 charge with the EEOC.  See infra § B(1); Complaint, ¶¶ 51, 52.

Defendants concede that the court has jurisdiction over plaintiff's retaliatory transfer claim, which was included in plaintiff's 1998 charge.  (Doc. 39, pg. 3).  Plaintiff timely filed the 1998 charge.  The 1998 charge sets the parameters of plaintiff's current PHRA cause of action.[3]  See Bailey v. Storlazzi, 729 A.2d 1206, 1214-15 (Pa.Super. 1999); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); Mroczek v. Bethlehem Steel Corp., 126 F.Supp.2d 379, 384-85 (E.D.Pa. 2001).  Under 43 P.S. §§ 959(a) and (h), the court only has jurisdiction over acts of discrimination which fall within the scope of the 1998 charge.  Bailey, 729 A.2d at 1215; Hicks v. ABT Associates, Inc., 572 F.2d 960, 965 (3d Cir. 1978).

> The relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.

Antol, 82 F.3d at 1295 (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).  See also Bailey, 729 A.2d at 1215.

---

[3] The PHRA and Title VII are complementary state and federal statutes. Courts often analyze claims under the two statutes concurrently.  Therefore, in determining the scope of plaintiff's PHRA claims, the court relies on both state and federal case law applying PHRA and Title VII.  It should be noted, however, that PHRA encompasses a broader range of discrimination than Title VII.  Compare 43 P.S. § 955; 42 U.S.C. § 2000e-2.

In Waiters, the Third Circuit held that a district court has jurisdiction over a retaliatory termination claim where the plaintiff had previously filed an EEOC claim sounding in retaliation. See Antol, 82 F.3d at 1295 (discussing Waiters, supra). The Antol court later explained that:

> [r]equiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory acts fell squarely within the scope of the earlier EEOC complaint or investigation.

82 F.3d at 1295 (discussing Waiters, supra). See also Mroczek, 126 F.Supp.2d at 385 (finding the court has jurisdiction over later acts of sexual harassment when prior EEOC complaint alleged sexual harassment).

According to the complaint, the 1998 charge alleged that plaintiff "was transferred as a result of her medical condition and the fact that she had complained about the defendant's failure to maintain a smoke-free building." Complaint, ¶ 40. In Count II of the complaint, plaintiff alleges discrimination on the basis of gender. Complaint, ¶¶ 64-71. The factual contentions alleged in the instant complaint do not support an inference that the 1998 charge implicated gender discrimination. Therefore, Count II is not properly within the scope of the 1998 charge. The court will grant defendants' motion to dismiss the PHRA claims contained in Count II of the instant complaint. The court will dismiss those claims without prejudice and grant leave to amend the complaint.

In Count IV of the complaint, plaintiff alleges numerous instances of retaliation. See Complaint, ¶¶ 80-88. These allegations are squarely within the scope of the 1998 charge. See Mroczek, 126 F.Supp.2d at 385. However, in order to have jurisdiction for a PHRA claim with regard to a particular defendant, plaintiff must have named that defendant in the administrative discrimination charge. 43 P.S. § 959; Rugg v. Green Acres Contracting Co., Inc., 55 Pa.D&C.4th 149, 159-61, 2001 WL 1900713 (Pa.Comm.Pl 2001); Kinnally v. Bell of Pennsylvania, 748 F.Supp. 1136, 1139-40 (E.D.Pa. 1990).

Plaintiff filed the 1998 charge shortly after her transfer from the Central Office Building. According to the complaint, that charge concerned only discrimination at the Central Office Building based on plaintiff's alleged disability. Therefore, defendant Fielder could not have been named in the that charge.[4]

Although the Third Circuit has recognized an exception to this rule, see Schafer v. Board of Public Educ. of the School Dist. of Pittsburgh, Pa., 903 F.2d 243, 252 (3d Cir. 1990) (acknowledging an exception when unnamed defendants share an identity of interest with the named defendants and received some form of actual notice of the administrative complaint), facts necessary to support application of this exception are absent from the instant complaint. The court will grant

---

[4] Defendant Fielder worked at the Harrisburg District Office where the air quality problems were unrelated to tobacco smoke. Complaint, ¶¶ 33-35.

defendant's motion to dismiss count IV as to defendant Fielder and grant leave to amend the complaint. As to all other defendants, the motion will be denied.

### D.     42 U.S.C. §§ 1983, 1985

In her brief in opposition to defendants' motion to dismiss, plaintiff withdrew her claims under 42 U.S.C. §§ 1983 and 1985. Therefore, the court will dismiss defendants' motion to dismiss these claims as moot.

### E.     Pennsylvania Right-to-Know Act - 35 P.S. § 7301, et seq.

In Count IX, plaintiff asserts a cause of action under the Pennsylvania Right-to-Know Act. 35 P.S. § 7301, et seq. Plaintiff alleges that defendants refused to provide her with a copy of the District Office inspection report in violation of the Right-to-Know Act. Complaint, ¶ 124.

Defendants contend that this cause of action is time-barred. Title 42 of Pennsylvania's consolidated statutes provides:

> (b)    The following actions and proceedings must be commenced within six months:
>
>    (1)    An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter.

42 Pa.C.S.A. § 5522(b)(1). A "government unit" is "[t]he General Assembly and its officers and agencies, any government agency or any court or other officer or agency of the unified judicial system." 42 Pa.C.S.A. § 102.

The six month statute of limitations applies to actions against governmental units, "except an action subject to another limitation specified in this subchapter." 42 Pa.C.S.A. § 5522(b)(1). See also Stoppie v. Johns, 720 A.2d 808, 810-11 (Pa.Commw. 1998); Salanek v. State Trooper Eric Olena, 558 F.Supp. 370, 371 (E.D.Pa. 1983). In order to determine the applicability of Section 5522(b)(1):

> courts first identify the facts underlying the complained-of state action. If the state has provided a statute of limitations for the specific conduct at issue, then that specific limitation period applies.

Stoppie, 720 A.2d at 811(quoting Salanek, 558 F.Supp. at 371).

This is a cause of action to enforce plaintiff's statutory rights under the Pennsylvania Right-to-Know Act, 35 P.S. § 7301, et seq. The court's independent research has shown, and plaintiff concedes, that Pennsylvania has not provided a more specific statutory period for this cause of action. Therefore, Section 5522(b)(1)'s six month statute of limitations applies to plaintiff's Right-to-Know cause of action. Accord Stoppie, 720 A.2d at 811.

Plaintiff alleges numerous violations of the Right-to-Know Act. However, the latest alleged violation took place in October or November 1998. Plaintiff filed the complaint in January 2001. (See Doc. 1). Therefore, plaintiff's Right-to-Know claim is time-barred. "The limitation in 42 Pa.C.S. § 5522(b)(1) . . . is not a waivable statute of limitations requiring affirmative pleading. It is a limitation which qualifies a substantive right by a condition of the time within which an action can

be maintained." <u>Reuben v. O'Brien</u>, 445 A.2d 801, 802 (Pa.Super. 1982).  Therefore, failure to comply with Section 5522(b)(1) is proper grounds upon which to grant a motion to dismiss.  <u>Id.</u> at 811.  The court will grant plaintiff's motion to dismiss plaintiff's Right-to-Know with prejudice.

### F.    Intentional Infliction of Emotional Distress

In her brief in opposition to defendants' motion to dismiss, plaintiff withdrew her claim for intentional infliction of emotion distress.  Therefore, defendants' motion to dismiss that claim will be dismissed as moot.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:    April 3, 2003